IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DON'T DISMYABILITIES, INC., and JULIE MALOUKIS,     Plaintiffs,<br><br>v.<br><br>RRE REALTY PARTNERS, LTD. and TJR MANAGEMENT, INC.     Defendants. | CIVIL ACTION NO. 1:17-CV-1170<br><br>DISABILITY ACCOMMODATIONS DISCRIMINATION COMPLAINT<br><br>ECF |

## COMPLAINT

### INTRODUCTION

1. This action arises under Title III of the Americans with Disabilities Act,[1] the Texas Architectural Barrier Act,[2] and the Texas Human Resources Code.[3] Julie Maloukis is an individual with a mobility impairment disability. Don't Dismyabilities, Inc. ("DDMA") is an organization of individuals with disabilities who are mobility impaired. They bring this civil rights claim against RRE Realty Partners, Ltd. ("RRE") and TJR Management, Inc. ("TJR") for owning and/or operating facilities that are not readily accessible to and usable by individuals with disabilities and for failing to comply with the TABA, thereby violating Plaintiffs' civil rights.

2. Plaintiffs seek a permanent injunction to enjoin RRE and TJR from engaging in these unlawful practices, seeks the removal of architectural barriers that discriminate against individuals with mobility impairment disabilities, and declaratory relief, along with damages for violations of civil rights, along with attorney's fees and the costs of litigation.

### JURISDICTION

3. This Court has jurisdiction over the federal claims brought in this action under 28 U.S.C. §1331, 42 U.S.C. §3613, and 42 U.S.C. §12188 and supplemental jurisdiction over the state claims

---

[1] 42 U.S.C. § 12101 et seq., (the "ADA").

[2] Tex. Gov't Code Ch. 469 (previously, Texas Revised Civil Statutes, Article 9102 et seq.) (the "TABA").

[3] Tex. Hum. Res. Code § 121.001 et seq. (the "THRC").

under 28 U.S.C. §1367.

## BACKGROUND

4.  More than 25 years ago Congress determined that people with disabilities such as Plaintiff, was being discriminated against by entities such as Defendant. Specifically Congress found the following:

   a.  some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

   * * * *

   e.  individuals with disabilities continually encounter various forms of discrimination, including ... the discriminatory effects of architectural ... barriers [and] ... failure to make modifications to existing facilities ...;"[4]

5.  As a result of these findings the Congress passed the Americans with Disabilities Act to remedy these injustices. And specifically:

   a.  to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

   b.  to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;[5]

6.  The Americans with Disability Act Accessibility Guidelines (the "ADAAG" or the "Standards")[6] were adopted by the Department of Justice as standards for accessible design to carry out the provisions of the ADA as directed by Congress.[7]

7.  In an effort to prevent discrimination against persons with disabilities, Texas passed the Texas Architectural Barrier Act , stating, "This chapter is intended to further the policy of this state to encourage and promote the rehabilitation of persons with disabilities and to eliminate, to the extent possible, unnecessary barriers encountered by persons with disabilities whose ability to engage in gainful occupations or to achieve maximum personal independence is needlessly

---

[4] 42 U.S.C. §12101(a).
[5] 42 U.S.C. §12101(b).
[6] 28 C.F.R. Part 36, Appendix A.
[7] 42 USC §12186(b).

restricted."[8]

8. The intent of the TABA was "...to ensure that each building and facility subject to this chapter is accessible to and functional for persons with disabilities..."[9]

9. The Texas Accessibility Standards[10] adopted under the TABA apply to "a privately funded building or facility that is defined as a "public accommodation" by Section 301, Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments, and that is constructed, renovated, or modified on or after January 1, 1992".[11]

## *PARTIES*

10. Plaintiff, Julie Maloukis ("Ms. Maloukis") is an individual with a disability within the meaning of Title III of the ADA and the TABA, and a "Person with a disability" as defined by THRC, in that she has a physical impairment that substantially limits one or more of her major life activities. She is "disabled" because of a because of a spinal cord injury and uses a wheelchair for purposes of mobility.

11. DDMA is a not for profit Texas corporation organized exclusively for charitable, religious, educational, and scientific purposes. The goal of DDMA is to protect the legal rights of persons with mobility impairment disabilities. DDMA seeks the removal of architectural barriers from government entities, places of public accommodation, commercial facilities, along with employment and living environments. DDMA attempts to resolve failures to accommodate in places of public accommodation, and failing voluntary compliance, to force the removal of architectural barriers that are structural in nature through litigation and injunctive relief.

12. Each individual member of DDMA is a resident of the State of Texas and an individual with a disability within the meaning of the ADA 3(2), 42 U.S.C. 12102(2), in that each individual

---

[8] TEX. GOV'T CODE §469.001(c).

[9] TEX. GOV'T CODE §469.001(a).

[10] 16 TEX. AMIN. CODE, § 68 (1994) Tex. Dept. Lic. & Reg. (the "TAS"). The TAS sections are exactly the same as the ADAAG sections cited herein and were copied verbatim from the ADAAG as applied to the architectural barriers described in this pleading.

[11] TEX. GOV'T CODE, Sec. 469.003(a)(4).

---

*COMPLAINT* Page 3

member has a physical impairment that substantially limits one or more of his/her major life activities, and requires the use of a wheelchair or other assistance device for purposes of mobility.

13. Defendant RRE is listed by the Williamson Central Appraisal District as the owner of the real property located at 100 W. Palm Valley Blvd, Round Rock, Texas (the "Property"). RRE is listed by the Texas Secretary of State as a Domestic limited partnership.

14. Secretary of State records show Richard A Motycka as RRE's registered agent at 2200 W. Wadley, Suite 201, Midland, TX 79705. He may be served with process at that address.

15. Secretary of State records list TJR Management, Inc. as a domestic corporation. Those same records lit TJR as RRE's general partner and Richard A Motycka as TJR's registered agent at 2200 W. Wadley, Suite 201, Midland, TX 79705. He may be served with process at that address.

## *FACTS*

16. The Property is a strip shopping center and a public accommodations under Title III of the ADA as defined in 42 USC §12181(7)(E).[12]

17. RRE is a private entity within the meaning of the ADA.[13]

18. TJR is a private entity within the meaning of the ADA.[14]

19. The Property is a "a privately funded building or facility that is defined as a 'public accommodation' by Section 301, Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments."[15]

20. The Property is subject to the requirements of Title III of the ADA and the TABA.

21. The first certificates of occupancy for the Property were issued before January 26, 1993. Thus, the Property is defined as an "existing facility" under the ADA.[16]

---

[12] 42 USC §12181(7)(E), "shopping center, or other sales or rental establishment;"
[13] 42 USC §12181(6).
[14] 42 USC §12181(6).
[15] TEX. GOV'T CODE §469.003(a)(4).
[16] 28 CFR part 36.401.

*COMPLAINT* Page 4

22. Prior to instituting this suit, Ms. Maloukis visited the Property and encountered a variety of architectural barriers, including inaccessible parking and no accessible route to and into, and throughout the facility.

23. A complete list of the violations at these locations are more appropriately dealt with in an expert's report after a complete site review of the facility and Ms. Maloukis and DDMA will provide a complete report to the Defendants once their representatives have had an opportunity to conduct formal discovery.

24. What is clear from just the brief list that follows, however, is that RRE and TJR have made little effort at all to comply with the ADA and have failed to remove barriers where it would cost very little, but are a major impediment to individuals like Ms. Maloukis and the members of DDMA who use a wheelchair for mobility.

25. Both the ADAAG and TAS require that where a public accommodation provides parking spaces for self-parking by employees or visitors, or both, it must also provides accessible parking for the disabled as defined in ADAAG/TAS §501 and §502.

26. The Property provides parking spaces for self-parking by employees or visitors, or both.

27. The Property has parking with the universal accessibility symbol painted on the parking space surface, but no signage designating the space as accessible or signage not at the correct height.[17]

28. The Property has parking designated as accessible but the spaces have no access aisle.[18]

29. The Property has parking designated as accessible but the adjacent access aisles are not flat and level because they have curb ramps extending into the access aisles that is specifically

---

[17] ADAAG/TAS §502.6 Identification. Parking space identification signs shall include the International Symbol of Accessibility complying with 703.7.2.1. Signs identifying van parking spaces shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign. *See* Appendix ("App.") Photos 1, 2, and 5.

[18] *See* ADAAG/TAS §502.2 Vehicle Spaces. Car parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3. *See* App. Photos 3 and 4.

prohibited by the ADAAG and TAS.[19]

30. The Property has parking designated as accessible but the adjacent access aisles are not 60 inches wide.[20]

31. ADAAG\TAS §206.2.1 requires an accessible route shall be provided within the site from accessible parking spaces to the accessible building or facility entrance they serve.

32. There is no accessible route from much of the parking into the public accommodation entrances that the parking serves. The curb ramps serving much of the parking designated accessible have surfaces sloped greater than allowed by the ADAAG or TAS.[21]

33. The Property has separate lots that have no accessible parking at all.[22]

34. The Property, like all public accommodations, has been under the obligation to comply with the ADA and TABA since January 26, 1992. Since that time it has failed to remove barriers from the Property and provide correct parking and accessible routes from the parking to its public accommodation's entrances.

35. Under the ADA discrimination includes a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs when facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof.[23]

---

[19] ADAAG/TAS §502.4 Floor or Ground Surfaces. Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. ADAAG/TAS §406.5 Location. Curb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles. *See* Appe. photos 1 and 5.

[20] ADAAG/TAS §502.3.1 Width. Access aisles serving car and van parking spaces shall be 60 inches (1525 mm) wide minimum. *See* photo 1.

[21] ADAAG/TAS §406.1 General. Curb ramps on accessible routes shall comply with 406, 405.2 through 405.5, and 405.10. ADAAG/TAS §405.2 Slope. Ramp runs shall have a running slope not steeper than 1:12. ADAAG/TAS §406.3 Sides of Curb Ramps. Where provided, curb ramp flares shall not be steeper than 1:10. *See* photos 1 and 5.

[22] ADAAG/TAS §208.1 General. Where parking spaces are provided, parking spaces shall be provided in accordance with 208. *See* ADAAG/TAS Advisory 208.2 Minimum Number. The term "parking facility" is used Section 208.2 instead of the term "parking lot" so that it is clear that both parking lots and parking structures are required to comply with this section. The number of parking spaces required to be accessible is to be calculated separately for each parking facility; the required number is not to be based on the total number of parking spaces provided in all of the parking facilities provided on the site.

[23] 42 USC §12183(a)(2); 28 CFR 36.403(a).

36.     Since the ADA was passed, RRE and TJR have resurface and repainted the parking at the Property and placed non compliant curb ramps with a design specifically prohibited by the ADAAG and TAS and have failed to remove barriers where it would cost very little, but are a major impediment to individuals with disabilities like Ms. Maloukis and DDMA's members who use a wheelchair for mobility and when it engaged in renovation, failed to comply with mandatory accessibility requirements under both the ADA and the TABA.

37.     Prior to the filing of this suit, the undersigned attorney, on behalf of Ms. Maloukis and DDMA, wrote to Richard A Motycka listed by the Secretary of State as TJR's Director and registered agent of each Defendant, detailing the barriers that Ms. Maloukis encountered and the Property's failure to comply with the ADA's parking requirements and requesting that he have his attorney contact the undersigned to resolve these failures by agreeing to provide accessible parking and accessible routes to ADA standards by a date certain and pay minimal damages and attorneys' fees incurred to date.

38.     After discussions by the undersigned with RRE's and TJR's attorney, in May 2016, Ms. Maloukis and DDMA reached agreement with RRE and TJR to resolve this case by Defendants agreeing to modify the Property to provide correct accessible parking spaces and create an accessible route from the designated accessible parking to the public accommodation entrances on or before January 15, 2017.

39.     RRE and TJR further agreed to have a Registered Accessibility Specialist ("RAS") licensed by the Texas Department of Licensing and Regulation review the Property and submit the review to Attorney for Plaintiffs within 30 day of the completion of remediation showing that all remediation complied with the ADAAG and TAS.

40.     Because RRE and TJR failed to provide a RAS review, and after further complaints by Ms. Maloukis that nothing had been done to the Property, the undersigned attorney personally performed a site review on December 14, 2017 and found that there has been no Property remediation. Thus, suit has been filed.

41. Under the law, both the landlord who owns the real property and the tenant who owns or operates the public accommodation are jointly and severally liable for ADA violations. As between those parties, allocation of responsibility for complying with ADA barrier removal may be determined by lease or other contract.[24] However, as the owner, RRE is a necessary party to any lawsuit seeking ADA remediation at its Property.

42. Despite the architectural barriers Ms. Maloukis encountered, she has used the property since the agreement was signed and will continue use the facility despite the barriers she has encountered.

## CAUSES OF ACTION
### Count 1
### ADA Title III Failure to Remove Where Readily Achievable

43. The ADA places an ongoing obligation on all public accommodations to remove architectural barriers from existing facilities if that removal is readily achievable.[25] Defendants discriminate against Julie Maloukis and DDMA's members on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, they own and operate a public accommodation that does not afford the members of DDMA the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available to its able bodied patrons as required by law because it has failed to remove those barriers where the removal was readily achievable.

44. As a direct and proximate result of Defendants denial of appropriate and dignified access into and use of the Property, each has deprived Plaintiff's of their civil liberties and thereby discriminated against them.

### Count 2
### ADA Title III Failure to Make Useable Alterations

45. The ADA requires that when a facility or part thereof that is altered by, on behalf of, or for

---

[24]*See* 36 C.F.R. 201 (b).

[25]42 USC 12182(b)(2)(A)(iv); 28 CFR Part 36.304(b).

the use of a public accommodation in a manner that affects or could affect the usability of the facility or part thereof, alterations must be made in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, including the parking and path of travel into and throughout the facility.[26]

46.     RRE's and TJR's failure to provide accessible parking and an accessible path of travel into and throughout the facility when they engaged in construction, resurfacing and restriping, or build out is a failure to make the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs is discrimination and denied DDMA's members appropriate and dignified access into and use of the Property and has deprived Plaintiffs of their civil liberties and thereby discriminated against them.[27]

## Count 3
## Tex. Hum. Res. Code - Discrimination

47.     TEX. HUM. RES. CODE § 121.003(a) provides that persons with a disability have the same right as the able-bodied to the full use and enjoyment of any public facility in the state.

48.     TEX. HUM. RES. CODE § 121.003(d)(1) specifically provides that failure to comply with the provisions of the TABA is discrimination.

49.     TEX. HUM. RES. CODE §121.004(b) provides that any person with a disability deprived of his or her civil liberties may maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $300.00 to the person with a disability.

50.     Defendants have violated TABA[28] by engaging in renovations at the Property and failing to design and construct buildings and facilities on or after January 1, 1993 to the extent required by the

---

[26] 42 USC §12183(a)(2).

[27] *Id.*

[28] Tex. Civ. Stat. Art. 9102 Sec. 2(a)(4).

*COMPLAINT*                                                                                                   Page 9

Texas Accessibility Standards issued by the Texas Department of Licensing and Regulation.[29]

51.     As a direct and proximate result of RRE's and TJR's violations of the TABA as set forth above, DDMA's members have been denied appropriate and dignified access into and use of the Property and Defendants have violated their civil rights.

## *REQUEST FOR RELIEF*

DDMA respectfully prays that the Court enter an order granting the following relief.

52.     An order directing Defendants to remove the architectural barriers barring DDMA's members from the full and equal access to the facilities of the Property enjoyed by those patrons who do not have a mobility impairment and for Defendants to provide correct accessible parking and correct accessible routes to the public accommodation on the Property, and to make the Property accessible to and usable by individuals with disabilities, consistent with the ADA Accessibility Guidelines for Buildings and Facilities and the Texas Accessibility Standards;

53.     An entry of money judgment against the Defendants awarding Julie Maloukis and DDMA damages for violation of its members civil liberties and such further amount as may be shown by the evidence at trial.

54.     An award to DDMA of all attorney's fees, including litigation expenses and all costs; and;

55.     An award to DDMA for all other relief at law and in equity for which the Court deems appropriate.

Dated: December 15, 2017

                                                              Respectfully submitted,

                                                              *s/Kenneth Carden*
                                                              **KENNETH D. CARDEN**
                                                              Bar Card No. 03787300
                                                              Carden Law PLLC
                                                              1409 South Lamar # 601

---

[29] TEX. GOV'T CODE §469.052.

---

*COMPLAINT*                                                                                     Page 10

Dallas, Texas 75215
Tel. 214.85.3535
Fax 214.485.3536
Carden@ADA-Law.com
**MARTIN J. CIRKIEL, ESQ**
Bar Card No. 00783829
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com

**Attorneys for Ms. Maloukis and Don't Dismyabilities, Inc.**

*COMPLAINT* Page 11